Mark Ankcorn (Cal. Bar No. 166871)
Roberto Robledo (Cal. Bar No. 260041)
ANKCORN LAW FIRM, PC
9845 Erma Road, Suite 300
San Diego, California 92131
(619) 870-0600
(619) 684-3541 fax
mark@markankcorn.com

Beth E. Terrell (Cal. Bar No. 178181)
Kim L. Gunning (to be admitted Pro Hac Vice)
TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
(206) 816-6603
(206) 350-3528 fax
bterrell@tmdwlaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Jacqueline Selby**, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**CardWorks, Inc.; Advanta Business Card Master Trust; Sage Capital Recovery, LLC,**<br><br>Defendants. | '12CV1562 W    BGS<br><br>**Class Action Complaint**<br><br>Jury Trial Demanded |

1.     Jacqueline Selby ("Plaintiff") brings this class action for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendants in negligently, knowingly, and willfully contacting Plaintiff on her cellular telephone without her express prior consent, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").  Plaintiff alleges as follows upon personal knowledge as to herself and her own actions and as to all other matters alleges upon information and belief.

///

1

2
**Jurisdiction and Venue**

3        2.        This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as the claims asserted

4   herein by the Plaintiff arise under the laws of the United States, specifically 47 U.S.C. §

5   227(b)(3).  *Mims v. Arrow Fin. Svcs.*, 132 S.Ct.740 (2012). Venue is proper in this district as

6   Defendants reside within the district and do business here.

7

8
**Parties**

9        3.        Jacqueline Selby is a natural person residing in California.  She is the account

10   holder of a cellular telephone number and pursuant to the terms of her contract is charged for

11   each call.

12        4.        Defendant CardWorks, Inc. ("CardWorks") is a third party bankcard servicer

13   incorporated in Delaware with its principal place of business in Woodbury, New York.

14   CardWorks does business in every state including California.

15        5.        Defendant Advanta Business Card Master Trust ("ABCMT") is a Delaware

16   common law trust that is the issuing entity for asset-backed certificates.  Non-party Deutsche

17   Bank Trust Company Americas, a New York banking corporation, is the indenture trustee for

18   ABCMT and is responsible, among other things, for selecting the servicer of the trust's assets

19   and making certain reports about the trust to relevant entities including the Securities and

20   Exchange Commission.

21        6.        Defendant Sage Capital Recovery ("Sage") is a New Jersey limited liability

22   company with its principal place of business in Cherry Hill, New Jersey.  Sage does business in

23   every state including California and collects debts asserted to be due and owing to itself and

24   others, including debts owed to ABCMT serviced by CardWorks.

25

26
**Factual Allegations**

27        7.        Thought its subsidiaries and agents, CardWorks employs hundred of persons at

28   call centers in Woodbury, New York, and Pittsburgh, Pennsylvania, among other locations.

These calling centers use automatic telephone dialing systems and computerized account information to track, record, and maintain the consumer debts serviced by CardWorks on behalf of its principals.

8.     CardWorks services more than 220,000 accounts owned by ABCMT with approximately $1.7 billion in receivables, among other debts it services.  From time to time, CardWorks employs debt collectors including Sage to collect past-due accounts including those belonging to ABCMT.

9.     Sage also maintains at least one call center in the United States and uses automatic telephone dialing systems and computerized account information to track, record, and collect debts alleged to be due and owing to itself and others.

10.     Both Sage and CardWorks used an automatic telephone dialing system to call Plaintiff on her cellular telephone.  At no time did either defendant have Plaintiff's express permission to do so.

11.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing and debt collection practices. The TCPA regulates, *inter alia*, the use of automated dialing systems. Specifically, section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

12.     47 U.S.C. § 227(b) states in pertinent part:

> **(b) Restrictions on use of automated telephone equipment**
> (1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>      (A)   to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice— . . .
>           (iii)   to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call; …
> (3) Private right of action. A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—
>      (A)   an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>      (B)   an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>      (C)   both such actions.

1
2

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount available under subparagraph (B) of this paragraph.

3      13.    According to findings by the Federal Communication Commission ("FCC"), the

4   agency Congress vested with authority to issue regulations implementing the TCPA, such calls

5   are prohibited because, as Congress found, automated or prerecorded telephone calls are a

6   greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly

7   and inconvenient. The FCC also recognized that wireless customers are charged for incoming

8   calls whether they pay in advance or after the minutes are used. *Rules and Regulations*

9   *Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report

10  and Order, 18 FCC Rcd 14014 (2003).

11     14.    On January 4, 2008, the FCC issued a Declaratory Ruling confirming that

12  autodialed and prerecorded message calls to a wireless number by a creditor or on behalf of a

13  creditor are permitted only if the calls are made with the "prior express consent" of the called

14  party. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection*

15  *Act of 1991* ("FCC Declaratory Ruling"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43

16  Communications Reg. (P&F) 877, 2008 WL65485 (F.C.C.) (2008).

17     15.    The FCC "emphasize[d] that prior express consent is deemed to be granted only if

18  the wireless number was provided by the consumer to the creditor, and that such number was

19  provided during the transaction that resulted in the debt owed." *FCC Declaratory Ruling*, 23

20  F.C.C.R. at 564-65 (¶10).

21     16.    Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the

22  burden is on Defendants to demonstrate that Plaintiff gave her express consent to call her cell

23  phone within the meaning of the statute.  *See FCC Declaratory Ruling*, 23 F.C.C.R. at 565 (¶

24  10).

25     17.    Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling,

26  "[c]alls placed by a third party collector on behalf of [a] creditor are treated as if the creditor

27  itself placed the call." *See FCC Declaratory Ruling*, 23 F.C.C.R. at 565 (¶ 10).

28     18.    Plaintiff does not recall listing her cellular telephone number in or on any

1  documents during the transaction that resulted in the debt allegedly owed to ABCMT.  In any

2  event, after receiving harassing collection calls and letters from the original servicer of the

3  ABCMT — non-party and now-defunct entity Advanta Bank Corporation — Plaintiff instructed

4  her attorney to send a written notice of representation and request to cease contact.

5  19.    Plaintiff's attorney sent that written notice on August 11, 2009, via certified mail,

6  which was received by non-party Advanta Bank Corporation on August 14, 2009.  This written

7  notice clearly and conspicuously stated that all calls and letters to Plaintiff must cease and all

8  future communication about the debt was to be directed to her attorney at the provided address

9  and phone number.

10  20.    Plaintiff withdrew any consent that may have been given originally by virtue of

11  this correspondence from her attorney.

12  21.    As the principal of its servicing agent, Defendant ABCMT is charged with notice

13  given to its agent.  Cal. Civ. Code § 2332; *see also Zurich Ins. Co. (US Branch) v. Killer Music,*

14  *Inc.*, 998 F.2d 674, 679 (9th Cir. 1993).

15  22.    Defendants disregarded the written notice sent by Plaintiff and continued to call

16  Plaintiff and send her written demands for payment.

17  23.    Defendants acted willfully or knowingly or both in calling numbers using an

18  autodialer without regard to the TCPA or whether the number was assigned to a cellular

19  telephone.

20  24.    As the creditor on whose behalf autodialed calls were made, ABCMT is equally

21  liable for each call placed on its behalf by CardWorks and/or Sage, as well as any other servicer,

22  debt collector, or other agent, contractor, or affiliate who placed such calls.

23  25.    Similarly, CardWorks is liable in this action for calls it (or any agent working on

24  its behalf, including Sage) placed to cellular telephone subscribers without their prior express

25  consent on behalf of any principal, even where the calls were not placed on behalf of ABCMT.

26  26.    Sage is liable in this action for calls it placed to cellular telephone subscribers

27  without their prior express consent on behalf of any principal, even where the calls were not

28  placed on behalf of ABCMT or CardWorks.

27.    At least 55 calls were placed by CardWorks to Plaintiff's cellular telephone using an automatic telephone dialing system.

28.    At least 13 calls were placed by Sage to Plaintiff's cellular telephone using an automatic telephone dialing system.

29.    Many of these calls used an artificial or pre-recorded voice to leave a message or give instructions.

30.    In calling Plaintiff on her cellular telephone without express prior permission, Defendants violated 47 U.S.C. § 227(b).

31.    Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23 on behalf of herself and on behalf of all others similarly situated.

32.    The proposed Class that Plaintiff seeks to represent is defined as follows:

> All persons within the United States who, on or after June 25, 2008, received an non-emergency telephone call from Defendants to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and who did not provide prior express consent for such calls.

33.    Collectively, these persons will be referred to as "Class members."  Plaintiff represents, and is a member of, the Class.  Excluded from the Class are Defendants and any entities in which they or their subsidiaries have a controlling interest, Defendants' agents and employees, the judicial officer to whom this action is assigned and any member of the court staff and immediate family, and claims for personal injury, wrongful death, and emotional distress.

34.    Plaintiff does not know the exact number of members in the Class, but based upon representations by CardWorks and Sage as to their market share in the United States, Plaintiff reasonably believes that Class members number at minimum in the hundred thousands.  This Class size includes persons alleged to owe debts that were assembled as part of the asset pool of ABCMT or later transferred to it, as well as persons who co-signed for such credit cards; persons alleged to owe consumer and business debts serviced by CardWorks or its affiliates and subsidiaries; persons alleged to owe consumer and business debts serviced by Sage or its affiliates and subsidiaries; and all other persons whom Defendants or their affiliates dialed (or mis-dialed).

35.     There are questions of law and fact common to the members of the Class that predominate over any questions affecting only individual members, including, whether Defendants made any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, in violation of the TCPA.

36.     Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

37.     Plaintiff will fairly and adequately protect the interests of the Class, and has retained attorneys experienced in class and complex litigation.

38.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for the following reasons:

      a.   It is economically impractical for members of the Class to prosecute individual actions;

      b.   The Class is readily definable; and

      c.   Prosecution as a class action will eliminate the possibility of repetitious litigation.

39.     A class action will cause an orderly and expeditious administration of the claims of the Class. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

40.     Plaintiff does not anticipate any undue difficulty in the management of this action.

**First Claim for Relief—Negligent Violations of the TCPA**

41.     Plaintiff re-alleges and incorporates by reference the above paragraphs as though set forth fully herein.

42.     The foregoing act and omissions of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 et seq.

43.     As a result of Defendants' negligent violations of the TCPA, Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every call placed in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

44.     Plaintiff and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future.

**Second Claim for Relief—Knowing or Willful Violations of the TCPA**

45.     Plaintiff re-alleges and incorporates by reference the above paragraphs as though set forth fully herein.

46.     The foregoing acts and omissions of Defendants constitute numerous and multiple knowing or willful, or both, violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

47.     As a result of Defendants' knowing and willful violations of the TCPA, Plaintiff and each member of the Class are entitled to treble damages of up to $1,500 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

48.     Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future.

49.     Plaintiff demands a jury trial on each of the causes of action set forth herein, including the amount of damages to be awarded for each violation proven at trial.

///

**Prayers for Relief**

WHEREFORE, Plaintiff respectfully prays that judgment be entered against Defendants CardWorks, Inc., Sage Capital Recovery, LLC, and Advanta Business Card Master Trust, jointly and severally, for the following:

1. An injunction against the calling of cellular telephones by Defendants' call centers, except where the cellular telephone subscriber has provided prior express consent to the calls;

2. Damages pursuant to 47 U.S.C. § 227(b)(3);

3. Costs of litigation and reasonable attorneys' fees;

4. Such other and further relief as the court may deem just and proper.


Dated: June 25, 2012   ANKCORN LAW FIRM, PC

            /s/ Mark Ankcorn


            TERRELL MARSHALL DAUDT
            & WILLIE, PLLC

            /s/ Beth Terrell

            Attorneys for Plaintiffs