UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JACQUELINE SELBY, on behalf of herself and all others similarly situated, | ) ) ) | Civil No.12cv01562 AJB (BGS) |
| Plaintiff, | ) ) ) | ORDER GRANTING MOVING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DENYING MOVING DEFENDANT'S MOTION TO STAY ACTION |
| v. | ) ) | |
| DEUTSCHE BANK TRUST COMPANY AMERICAS, as trustee for Advanta Business Card Master Trust; CARDWORKS, INC., and SAGE CAPITAL RECOVERY, LLC | ) ) ) ) ) ) | |
| Defendants. | ) ) | [Doc. No. 18] |

Presently before the Court is the Motion to Compel Arbitration and Stay Action filed by Defendant Deutsche Bank Trust Company Americas ("Deutsche Bank"), as trustee for Advanta Business Card Master Trust ("ABCMT"), and Defendant CardWorks, Inc. ("CardWorks") (collectively referred to as "Moving Defendants") on September 7, 2012. Defendant Sage Capital has not joined in the instant motion, or filed any documents in support or opposition of the motion. For the reasons set forth below, the Court GRANTS the Moving Defendants' Motion to Compel Arbitration and DENIES Moving Defendants' Motion to Stay Action.

/ / /

/ / /

# *BACKGROUND*

***A.    Factual Background***

### 1.    Relationship Among the Parties

Plaintiff Jacqueline Selby ("Plaintiff") held a business credit card issued by non-party Advanta Bank Corp. ("Advanta Bank"), formerly a Utah industrial loan corporation and a wholly-owned subsidiary of Advanta Corporation.  (Doc. No. 3 at ¶ 4.)  In November 2009, Advanta Corporation filed for bankruptcy under Chapter 11.  (*Id.*)  Thereafter, Advanta Bank, as a subsidiary of Advanta Corporation, was closed by the Utah Department of Financial Institutions on May 19, 2010.  (*Id.*)  The  Federal Deposit Insurance Corporation ("FDIC") was subsequently named as Advanta Bank's receiver.  (*Id.*)

Non-party ABCMT is the issuer of certificates secured by credit card receivables originated by Advanta Bank, including Plaintiff's credit card account.  (*Id.*)  Defendant Deutsche Bank serves as the indenture trustee for ABCMT.  (*Id.* at ¶¶ 4, 5.)  On July 26, 2010, Defendant Deutsche Bank appointed Defendant CardWorks and CardWorks Servicing, LLC to jointly act as successor servicers to ABCMT.[1]  (*Id.* at ¶ 6.)  Defendant Sage Capital  Recovery, LLC ("Sage") collects debts asserted to be due and owing to itself and others, including debts owed to ABCMT and serviced by CardWorks.  (*Id.* at ¶ 7.)

### 2.    Facts Leading to Plaintiff's Claims Against Defendants

Plaintiff held a business credit card issued by non-party Advanta Bank.  (Doc. No. 18-1 at 3.)  Plaintiff opened a credit card account ("Account") with Advanta Bank in September 2006.  (*Id.* at 5.) The Account was issued to Selby Investments, Inc. as the "Business" on the Account, with Plaintiff being the "Signing Individual."  (*Id.* at 5.)  After opening the Account, Advanta Bank mailed the credit card together with a copy of the Card Agreement ("Agreement") to Plaintiff.  (*Id.*)  The Agreement contained an arbitration disclosure stating, "that if a dispute of any kind arises out of your application

---

[1] Defendant CardWorks is the parent company of CardWorks Servicing LLC. (Doc. No. 18-1 at 9.)

for credit or out of the existence or use of this Agreement or your Account, either you or we or any other party that may be involved can choose to have that dispute resolved by binding arbitration." (Doc. No. 18-3 at 10, ¶ 35.)  Additionally, the terms of the Agreement provide, "Any claim, dispute, or controversy of any nature whatsoever (whether stated in contract, tort or otherwise, and whether involving federal and/or state statutory, regulatory, common law and/or equitable claims) now in existence or arising in the future related to the Account or this Agreement or the relationships that led up to or result from this Agreement . . . shall, at the election of you or us or any such third-party, be resolved by binding arbitration." (*Id.* at ¶ 36.)  In full, the relevant provisions of the Agreement read as follows:

**35. ARBITRATION DISCLOSURE:** By applying for credit with us or using your Account, you agree that if a dispute of any kind arises out of your application for credit or out of the existence or use of this Agreement or your Account, either you or we or any other party that may be involved can choose to have that dispute resolved by binding arbitration.  If arbitration is chosen, it will be conducted pursuant to the Code of Procedure of the National Arbitration Forum (the "NAF").  If you have questions about the NAF or want to see its rules and forms you can call the NAF toll-free at 1-800-474-2371 or visit its Website at www.arbitration-forum.com.  IF ANY PARTY TO ANY SUCH DISPUTE CHOOSES ARBITRATION, NEITHER YOU NOR WE OR ANY OTHER PARTY WILL HAVE THE RIGHT TO LITIGATE OR APPEAR IN COURT BEFORE A JUDGE OR JURY, OR TO ENGAGE IN DISCOVERY EXCEPT AS PROVIDED IN THE ARBITRATION RULES, OR TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OR ANY CLASS OF CLAIMANTS. THE ARBITRATOR'S DECISION WILL GENERALLY BE FINAL AND BINDING, OTHER RIGHTS THAT YOU WOULD HAVE IN COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION. IT IS IMPORTANT THAT YOU CAREFULLY READ AND UNDERSTAND THE ARBITRATION PROVISION (SECTION 36 BELOW) BEFORE APPLYING TO US FOR NEW CREDIT OR CONTINUING TO USE YOUR ACCOUNT.

**36. ARBITRATION PROVISION:** Any claim, dispute or controversy of any nature whatsoever (whether stated in contract, tort, or otherwise, and whether involving federal and/or state statutory, regulatory, common law and/or equitable claims) now in existence or arising in the future relating to the Account or this Agreement or the relationships that led up to or result from this agreement, including (without limitation) any claim relating to advertisements, promotions, and/or oral or written statements relating to your Account and/or any prior agreements between you and us, and/or any claim concerning the applicability or validity or enforceability of all or any portion of this Arbitration Provision), no matter by or against whom the claim is made, whether by or against either you or us or (to the full extent permitted by law) by or against any involved third party or employees, agents, representatives or assigns of either you or us or that third party (a "Claim"), shall at the election of you or us or any such third party be resolved by binding arbitration pursuant to this Arbitration

Provision conducted by the National Arbitration Forum (the "NAF"), a neutral arbitrator which is headquartered in Minneapolis, Minnesota and which provides arbitration services worldwide. All Aspects of any arbitration pursuant to this Arbitration Provision, including (without limitation) the selection of the arbitrator(s), shall be conducted under the NAF Code of Procedure in effect at the time the claim is filed (the "Code"), which Code is incorporated herein by reference. (Notwithstanding anything to the contrary contained in the Code, for any claim involving an amount equal to or greater than $75,000. either you or we or any such third party may require that the Claim be heard by a panel of three arbitrators. A single arbitrator will decide any Claim involving an amount less than $75,000.)

Arbitration can be elected at any time on any Claim, regardless of whether a lawsuit has been filed in court (unless that suit has resulted in a judgment), and a party who has asserted a Claim in a lawsuit in court may elect arbitration with respect to that Claim, and/or to any Claim(s) subsequently asserted in that lawsuit by any party. The arbitration proceeding can only decide your or our Claim(s). There shall be no authority for any Claim to be arbitrated on a class action or representative basis or as a "private attorney general" matter, and any arbitration under this Arbitration Provision may not consolidate or join claims of other persons no matter how similar they may be to your and/or our Claim(s). An arbitrator may award a prevailing party its attorneys' fees and costs pursuant to applicable law. Any
arbitration hearing that you attend will take place in the federal judicial district where you reside. NAF rules and forms, including a schedule of fees, may be obtained by calling toll-free at 1-800-474-2371, or by visiting the NAF's website at www.arbitration-forum.com. At your request, we will advance the first $250 of the filing and hearing fees for any Claim which you may file against us, and we will also consider an additional request that we advance additional filing or hearing fees or other costs for you because of your financial circumstances. The arbitrator will decide whether we or you will ultimately be responsible for paying those fees and other costs. If either party (you or we) fails to submit to arbitration after a proper demand to do so, that party shall bear all of the costs and expenses, including (without limitation) reasonable attorneys fees, incurred by the other party in compelling arbitration. This Arbitration Provision relates to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 USC 1 et seq. (the "FAA"), as it may be amended from time to time. The arbitrator shall apply relevant law and provide written, reasonable findings of fact and conclusions of law as provided by the Code, and judgment on an arbitration award may be entered in any court having jurisdiction. This Arbitration Provision shall survive repayment of your extension of credit and termination of your Account.

Important Notes: If any portion of this Arbitration Provision is deemed invalid or unenforceable under the FAA or any other applicable law or the Code, that fact  will not invalidate the remaining portions of this Arbitration Provision except as follows: if the portion of this Arbitration Provision deemed invalid or unenforceable includes the prohibitions on the arbitration of claims on a class or representative basis and/or the prohibitions on the consolidation or joinder of similar claims, then this Arbitration Provision shall be deemed to be invalid and unenforceable in its entirety. Any claim or dispute concerning the applicability or validity or enforceability of all or any portion of this Arbitration Provision, including (without limitation) its prohibitions on the arbitration of claims on a class or representative basis and its prohibitions on the consolidation or joinder of similar claims, shall be heard and decided only by a court of

competent jurisdiction and not by any arbitrator under the Arbitration Provision. (Doc. No. 18-3 at 10, ¶¶ 35, 36 (emphasis in original).)

In her First Amended Complaint ("FAC") Plaintiff asserts that she received "harassing collection calls and letters" in violation of the Telephone Consumer Protection Act, 42 U.S.C. § 227 ("TCPA"), from "non-party and now-defunct entity Advanta Bank," the original servicer of the ABCMT. (Doc. No. 3 at ¶ 19.) Plaintiff thereafter instructed her attorney to send Advanta Bank a written notice of representation and request to cease contact. (*Id.*) Plaintiff's attorney sent the written notice via certified mail on August 11, 2009, and Advanta Bank received the notice on August 14, 2009. (*Id.* at ¶ 20.) Plaintiff alleges that the "written notice clearly and conspicuously stated that all calls and letters to Plaintiff must cease and all future communication about the debt was to be directed to her attorney at the provided address and phone number." (*Id.*) Thereafter, Plaintiff alleges Defendants disregarded the written notice sent by Plaintiff's attorney and continued to contact her demanding payment. (*Id.* at ¶¶ 22-23.) Specifically, Plaintiff asserts Defendants "acted willfully or knowingly or both in calling numbers using an autodialer without regard to the TCPA or whether the number was assigned to a cellular telephone." (*Id.*)

Plaintiff premises her theory of liability based on the following. First, Plaintiff alleges Defendant Deutsche Bank acted as the trustee for the creditor on whose behalf autodialed calls were made and was also responsible for selecting and managing ABCMT's agents and servicers; thus, Plaintiff contends Defendant Deutsche Bank is "equally liable for each call placed on ABCMT's behalf by CardWorks and/or Sage, as well as any other servicer, debt collector, or other agent, contractor, or affiliate who placed such calls." (*Id.* at ¶ 24.) Second, Plaintiff alleges Defendants CardWorks and Sage are similarly liable in this action for calls they placed to cellular telephone subscribers without their prior express consent, even when the calls were not placed on behalf of ABCMT. (*Id.* at ¶¶ 25, 26.)

/ / /

***B.     Procedural Background***

On June 25, 2012, Plaintiff filed her initial class action Complaint against CardWorks, ABCMT, and Sage,[2] asserting claims for relief based on both negligent and knowing violations of the TCPA.  (Doc. No. 1.)  Plaintiff's claims are based on the non-emergency telephone calls made by CardWorks to cellular telephones through the use of an automatic telephone dialing system or an artificial or prerecorded voice to individuals who did not provide prior express consent for such calls.  (FAC, Doc. No. 3, ¶ 35.)  On July 16, 2012, Plaintiff filed an Amended Complaint naming Deutsche Bank as trustee for ABCMT as an additional Defendant.  (*Id.* at ¶ 5.)  Subsequently, Moving Defendants Deutsche Bank and CardWorks filed the instant Motion to Compel Arbitration and Stay Action on September 7, 2012.  (Doc. No. 18.)  Plaintiff filed a response to Moving Defendants' motion to compel arbitration on November 2, 2012, and also requested judicial notice of various documents in support of their response brief.  (Doc. No. 25.)  On November 16, 2012, Moving Defendants filed their reply in support of the instant motion. (Doc. No. 26.)  Additionally, the Court granted Moving Defendants request to file a separate set of objections to Plaintiff's request for judicial notice.  (Doc. No. 31)  Thereafter, Plaintiff filed a response, (Doc. No. 33), to Moving Defendants' evidentiary objections, (Doc. No. 35).  On March 15, 2013, Plaintiff filed a notice of supplementary authority relating to the instant motion.  (Doc. No. 34.)

## ***LEGAL STANDARD***

The Federal Arbitration Act ("FAA") governs the enforcement of arbitration agreements involving interstate commerce.  9 U.S.C. § 2.  Pursuant to Section 2 of the FAA, an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  *Id.*  The FAA permits "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District

---

[2] Defendant Sage filed an Answer to Plaintiff's Amended Complaint on August 24, 2012. (Doc. No. 17.)  The Moving Defendants have not answered the Amended Complaint as of yet.

1   Court...for an order directing that such arbitration proceed in the manner provided for in

2   [the arbitration] agreement." *Id.* at § 4.  Further, given the liberal federal policy favoring

3   arbitration, the FAA "mandates that district courts shall direct parties to proceed to

4   arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter*

5   *Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Thus, in a motion to compel arbitration,

6   the district court's role is limited to determining "(1) whether a valid agreement to

7   arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at

8   issue." *Kilgore v. KeyBank Nat. Ass'n*, 673 F. 3d 947, 955-56 (9th Cir. 2012)(citing

9   *Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F. 3d 1126, 1130 (9th Cir. 2000)).  If

10   these factors are met, the court must enforce the arbitration agreement in accordance with

11   its precise terms.  *Id.*; *see also AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748

12   (2011) (noting courts must enforce arbitration agreements according to their terms).

13        While generally applicable defenses to contract, such as fraud, duress, or

14   unconscionability, may invalidate arbitration agreements, the FAA preempts state law

15   defenses that apply only to arbitration or that derive their meaning from the fact that an

16   agreement to arbitrate is at issue.  *AT&T Mobility*, 131 S. Ct. at 1745-47.  Because of the

17   strong policy favoring arbitration, any doubts are to be resolved in favor of the party

18   moving to compel arbitration.  *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp*.,

19   460 U.S. 1, 24 (1983).

20                              ***DISCUSSION***

21   **A.    *Whether A Valid Agreement To Arbitrate Exists Between The Parties***

22        With regard to the first prong of the Court's inquiry, it must be determined whether

23   a valid agreement to arbitrate exists between the parties.  Arbitration agreements are

24   generally presumed to be valid and enforceable, and arbitration must be compelled where

25   there is a valid agreement to arbitrate and the agreement encompasses the claims at issue.

26   *Chipron Corp.*, 207 F. 3d at 1130; *Shearson Express v. McMahon*, 482 U.S. 220, 226

27   (1987); *Mitsubishi Motors Corp. v. Soler Chrystler-Plymouth, Inc.* 473 U.S. 614, 626-27

28   (1985).  The party seeking to avoid arbitration bears the burden of demonstrating the

arbitration agreement is invalid or does not include the claims at issue.  *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

Both Plaintiff and Moving Defendants agree Plaintiff and Advanta Bank entered into the Agreement containing provisions that expressly require arbitration; however, the parties disagree as to the applicability of the arbitration provisions under the current circumstances.  (Doc. No. 3 at 2; Doc. No. 18-1 at 7.)  Plaintiff does not challenge the validity of the arbitration provisions generally.  Nor does Plaintiff allege any of the generally applicable defenses to contract in order to avoid the arbitration provision.  Rather, Plaintiff disputes whether Moving Defendants have standing to compel arbitration and argues the arbitration provisions are inapplicable to her TCPA claims against the Moving Defendants.  Therefore, as the existence of the above-referenced arbitration provisions of the Agreement are not in dispute by either party, the Court finds a valid agreement to arbitrate exists between the parties.

However, while acknowledging an agreement to arbitrate between herself and Advantage Bank, Plaintiff challenges whether Moving Defendants' have the requisite standing to compel arbitration as they are neither parties nor signatories to the Agreement.  As such, the Court will address whether the Moving Defendants' have standing to compel arbitration within its determination of whether a valid agreement to arbitrate exists between the parties.

## 1.    Moving Defendants' Standing To Compel Arbitration

Under the FAA, whether a non-signatory to an arbitration agreement can compel a signatory to submit to arbitration is determined not by state law, but by the federal substantive law of arbitrability.  *Int'l Paper Co. v. Schwabedissen Maschinen & Anlaqen GMBH,* 206 F.3d 411, 417 (4th Cir. 2000); *Chastain v. Union Sec. Life Ins. Co.*, 502 F. Supp. 2d 1072, 1075 (C.D. Cal. 2007).  Well-established common law principles provide that in appropriate circumstances, a nonsignatory can enforce or be bound by an arbitration provision within a contract that has been executed by other parties.  *International* ///

1   *Paper,* 206 F.3d at 416;  *see also Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir.

2   2006) ("non-signatories can enforce arbitration agreements as third party beneficiaries.")

3     "The right to compel arbitration stems from a contractual right," which generally

4   "may not be invoked by one who is not a party to the agreement and does not otherwise

5   possess the right to compel arbitration." *Britton v. Co-op Banking Group,* 4 F.3d 742,

6   744 (9th Cir.1993) (internal citations omitted). "[S]tate law," however, is applicable to

7   determine which contracts are binding under Section 2 of the FAA and enforceable under

8   Section 3 of the FAA, "if that law arose to govern issues concerning the validity,

9   revocability, and enforceability of contracts generally." *Arthur Anderson LLP v. Carlisle*,

10  556 U.S. 624, 631 (2009)[3]; *Perry v. Thomas,* 482 U.S. 483, 493, n. 9 (1987). *See also*

11  *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995)("When deciding

12  whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should

13  apply ordinary state-law principles that govern the formation of contracts"). "Traditional

14  principles of state law allow a contract to be enforced by or against non-parties to the

15  contract through assumption, piercing the corporate veil, alter ego, incorporation by

16  reference, third-party beneficiary theories, waiver, and estoppel." *Arthur Anderson LLP*,

17  556 U.S. at 631 (internal citation omitted); *Mundi v. Union Sec. Life Ins. Co.*, 555 F. 3d

18  1042, 1045 (9th Cir. 2009) ("General contract and agency principles apply in determining

19  the enforcement of an arbitration agreement by or against nonsignatories."); *Comer v.*

20  *Micor, Inc.,* 436 F.3d 1098, 1101 (9th Cir. 2006).

21    Plaintiff's main argument in opposition to Moving Defendants' motion to compel

22  arbitration is that Moving Defendants' lack standing to compel arbitration as

23  nonsignatories to the underlying Agreement. (Doc. No. 25 at 7.) Plaintiff contends

24  Moving Defendants have failed to demonstrate they are agents of Advanta Bank, and

25  therefore have not established the right to enforce the arbitration provision at issue. (*Id.*

26  

27    [3] In *Arthur Andersen LLP*, the court noted with respect to Sections 2 and 3 of the FAA, "Neither
provision purports to alter background principles of state contract law regarding the scope of agreements
28  (including the question of who is bound by them). Indeed § 2 explicitly retains an external body of law
governing revocation (such grounds 'as exist at law or in equity'). And we think § 3 adds no substantive
restriction to § 2's enforceability mandate." *Id.*

at 10.)  Further, Plaintiff alleges Advanta Bank's defunct status prevents Advanta Bank from being able to have agents in any way.  (*Id.*)

In response, Moving Defendants reference the following language from the Agreement:

> Any claim, dispute or controversy of any nature whatsoever . . . now in existence or arising in the future relating to the Account or this Agreement or the relationships that led up to or result from this agreement, . . . no matter by or against whom the claim is made, whether by or against either you or us or (to the full extent permitted by law) by or against any involved third party or employees, agents, representatives or assigns of either you or us or that third party (a "Claim"), shall at the election of you or us or any such third party be resolved by binding arbitration . . ..

(Doc. No. 18-1 at 17.)  Based on this language, Moving Defendants contend they have the requisite standing as involved third parties to compel arbitration through the express terms of the arbitration provisions in the Agreement.  (Doc. No. 18-1 at 17.)  As further support for this argument, Moving Defendants refer to the language in Plaintiff's Amended Complaint noting Defendant Deutsche Bank's role as indenture trustee for ABCMT, and "the trustee for the creditor on whose behalf autodialed calls were made," and Defendant CardWorks' role as the "successor servicer."  (*Id.*)  Moving Defendants contend such positions place them within the terms of the Agreement as, "involved third part[ies] or employees, agents, representatives or assigns of" Advanta Bank, and there-fore permit them to enforce the arbitration provisions.  (Doc. No. 18-3, ¶ 36.)

Having reviewed the relevant language, the Court finds the Agreement provides Moving Defendants standing to compel arbitration under the circumstances.  As noted previously, the language of the Agreement is broad and allows, "any involved third party" to elect binding arbitration.  (Doc. No. 18-3 at 10, ¶ 36.)  Here, the Moving Defendants, though not expressly named in the Agreement, are involved third parties given their respective roles as indenture trustee and successor servicers to signatory Advanta Bank.  Furthermore, the Agreement states any claim, regardless of by or against whom the claim is made, "relating to the Account or this Agreement or the relationships that led up to or result from this Agreement . . . " shall be subject to binding arbitration.

(Doc. Nos. 18-3 at 10; 10-3 at 10.)  Plaintiff's claims in the Amended Complaint arise from her relationship and Account with Advanta Bank, specifically her alleged non-payment and the Moving Defendants' attempts to collect the balance due on the Account. As such, the "express and unequivocal agreement to arbitrate" claims in the Agreement includes those claims asserted by or against Moving Defendants.  *See Kaplan v. First Options of Chicago, Inc.,* 19 F.3d 1503, 1512 (3d Cir.1994), *aff'd,* 514 U.S. 938 (1995) (noting that an agreement to arbitrate must be "express" and "unequivocal"); *See also Sherer v. Green Tree Servicing, LLC*, 548 F. 3d 379, 382 (5th Cir. 2008) (finding signatory's agreement to arbitrate any claims arising from "the relationships which result from th[e] [a]greement" sufficient to permit nonsignatory to compel arbitration).

As such, the Court finds Moving Defendants have standing to compel arbitration pursuant to the arbitration provisions, regardless of their being nonsignatories to the underlying Agreement.[4]  Accordingly, the first prong of the Court's inquiry is satisfied as the Court concludes there is a valid agreement to arbitrate between the parties by virtue of the Agreement between Plaintiff and Advanta Bank.[5]

## B.   *Whether The Arbitration Agreement Encompasses Plaintiff's Claims*

Having found Moving Defendants have standing under the Agreement to enforce the arbitration provisions, the second question the Court must address is whether Plaintiff's claims fall within the terms of the arbitration agreement.  It is widely accepted that " 'a party cannot be required to submit to arbitration any dispute which [it] has not agreed

---

[4] In Plaintiff's Notice of Recent Authority (Doc. No. 34), filed on March 15, 2013, Plaintiff cites the case of *Kramer v. Toyota Motor Corp*., to further support the argument that as nonsignatories to the underlying Agreement, Moving Defendants' lack standing to compel arbitration.  705 F.3d 1122 (9th Cir. 2013)  The Court has considered this case and the arbitration agreement discussed therein and finds it is distinguishable from the Agreement at issue in the present mater.  Specifically, the arbitration agreement in *Kramer* provided that only, "You or we may choose to have any dispute between you and u.s. [us] decided by arbitration." *Id.* at 1124.  As discussed previously, the language in the Agreement at issue unambiguously allows any involved third party to elect arbitration. Therefore, the Court finds *Kramer* is not binding on the issue of whether the nonsignatory Moving Defendants' have standing to compel arbitration.

[5] Insomuch as this Court finds Defendants' have the requisite standing to compel arbitration through the express terms of the Agreement, the Court need not address Moving Defendants' arguments pertaining to agency and equitable estoppel.

so to submit.' " *Howsam v. Dean Witter Reynolds,* 537 U.S. 79, 83 (2002) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582 (1960)).   However, it is also well established that "[a]rbitration provides a forum for resolving disputes more expeditiously and with greater flexibility than litigation." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.,* 363 F.3d 1010, 1011 (9th Cir. 2004) (internal citations omitted).   Accordingly, "arbitration should only be denied where '[it] may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *AT&T Tech., Inc. v. Commc'n Workers,* 475 U.S. 643, 650 (1986) (quoting *United Steelworkers,* 363 U.S. at 582–83; *see also In re Apple iPhone 3G Products Liab. Litig.,* 859 F. Supp. 2d 1084, 1088 (N.D. Cal. 2012).

Here, the Court finds the arbitration provisions in the Agreement encompass Plaintiff's TCPA claims.  By entering into the Agreement with Advanta Bank, Plaintiff agreed to arbitrate, "any dispute," involving "federal and/or state statutory" claims, such as those at issue here under the TCPA.  The Agreement also states that such claims relating "to the Account, or this Agreement or the relationships that led up to or result from this Agreement . . . including any claim relating to . . . oral or written statements relating to [the] Account . . ." shall be subject to arbitration.  (Doc. No. 18-3 at 10, ¶ 36.) As alleged, Plaintiff's claims under the TCPA stem from the underlying Agreement and Account, and specifically relate to alleged oral statements made by Moving Defendants regarding the balance Plaintiff owed on the Account.  In addition to being federal statutory claims encompassed by the arbitration provisions, Plaintiff's TCPA claims also relate to the Account, Agreement, and the relationships that resulted from the Agreement. Further, there is nothing in the language of the Agreement evincing an intent to exclude claims such as those brought by Plaintiff in the underlying matter.  *See AT&T Tech*., 475 U.S. at 650 ("in the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." (internal citations omitted)).  In this action, Plaintiff alleges federal statutory claims under the TCPA that relate directly to the Agreement

12

between Plaintiff and Advanta Bank.  Thus, Plaintiff's claims fall within the express scope of the arbitration provisions in the Agreement.[6]

In sum, the Court concludes a valid arbitration agreement exists between Plaintiff and Advanta Bank that grants Moving Defendants standing to enforce its provisions.  The Court also finds the agreement encompasses Plaintiff's claims under the TCPA relating to Plaintiff's Account under the terms of the Agreement.  As a result, it appears Moving Defendants may compel arbitration of Plaintiff's claims.  However, Plaintiff raises an additional argument against enforcing the arbitrations provisions based upon the unavailability of the arbitrator designated in the Agreement.

**C.     Whether the Arbitration Clause is Unenforceable Because of NAF's Unavailability**

Plaintiff also argues the arbitration provisions are unenforceable as they specifically designate NAF as the arbitrator and reference the use of the NAF Code.  (Doc. No. 25 at 22-23.)  Plaintiff contends NAF's designation was integral to the arbitration provisions such that NAF's unavailability renders the provisions unenforceable.  (*Id.*)  The arbitration clause provides in relevant part as follows:

> Any claim, dispute or controversy of any nature whatsoever . . . shall at the election of you or us or any such third party be resolved by binding arbitration pursuant to this Arbitration Provision conducted by the National Arbitration Forum (the "NAF"), a neutral arbitrator which is headquartered in Minneapolis, Minnesota and which provides arbitration services worldwide. All Aspects of any arbitration pursuant to this Arbitration Provision, including (without

---

[6] Plaintiff's primary argument for finding the arbitration provision does not encompass her TCPA claims is based upon the Moving Defendants being unable to enforce the arbitration provisions as non-signatories to the Agreement.  (Doc. No. 25 at 8.)  Plaintiff's argument that the clause "to the full extent permitted by law" limits the scope and enforceability of the arbitration clause by non-signatories is more akin to challenging whether Moving Defendants' have the requisite standing to compel arbitration.  (Doc. No. 25 at 8.) As discussed more thoroughly above, the Court dismissed this argument when it determined Moving Defendants have standing to enforce the arbitration provisions of the Agreement despite their status as non-signatories to the Agreement.  The Agreement itself authorizes third parties to enforce the arbitration provisions and Moving Defendants fall within the "related third party" category.  Accordingly, Plaintiff's argument that her claims are not encompassed by the arbitration provisions based on the Moving Defendants being non-signatories to the Agreement fails as well.

13

1  limitation) the selection of the arbitrator(s), shall be conducted under the NAF
2  Code of Procedure in effect at the time the claim is filed (the "Code"), which
   Code is incorporated herein by reference.

3                                    * * *

4  <u>Important Notes:</u> If any portion of this Arbitration Provision is deemed invalid
   or unenforceable under the FAA or any other applicable law or the Code, that
5  fact  will not invalidate the remaining portions of this Arbitration Provision
   <u>except as follows:</u> if the portion of this Arbitration Provision deemed invalid
6  or unenforceable includes the prohibitions on the arbitration of claims on a
   class or representative basis and/or the prohibitions on the consolidation or
7  joinder of similar claims, then this Arbitration Provision shall be deemed to be
   invalid and unenforceable in its entirety. Any claim or dispute concerning the
8  applicability or validity or enforceability of all or any portion of this Arbitration
   Provision, including (without limitation) its prohibitions on the arbitration of
9  claims on a class or representative basis and its prohibitions on the consolida-
   tion or joinder of similar claims, shall be heard and decided only by a court of
10 competent jurisdiction and not by any arbitrator under the Arbitration
   Provision.

12 (Doc. No. 18-3 at 10, ¶ 36.)  Further, the Agreement provides, "All aspects of any

13 arbitration pursuant to this Arbitration Provision, including (without limitation) the

14 selection of the arbitrator(s), shall be conducted under the NAF Code of Procedure in

15 effect at the time a Claim is filed (the "Code"), which Code is incorporated herein by

16 reference."  (*Id.*)

17        In light of these provisions,  Plaintiff asserts the references to NAF within the

18 Agreement are integral to the arbitration provisions.  (*Id.* at  15.)  As such, Plaintiff

19 argues, NAF's unavailability to arbitrate consumer claims renders the arbitration clause

20 unenforceable.[7]  (*Id.*)  Plaintiff cites the multiple references to NAF within the Agree

22        [7] In a footnote of their reply brief, Moving Defendants challenge whether Plaintiff
   has established NAF's inability to arbitrate the parties' dispute.  (Doc. No. 26 at 6, n. 4)
23 Indeed, Moving Defendants have objected to the evidence offered by Plaintiff to
   demonstrate NAF's unavailability, (Doc. No. 36); however, the Court has found several
24 cases establishing NAF's unavailability to arbitrate consumer claims such as Plaintiffs.
   *See Khan v. Dell Inc.*, 669 F.3d 350, 356 (3rd Cir. 2012) (noting "the NAF's Consent
25 Judgment with the State of Minnesota prevents it from acting as an arbitrator"); *Lima v.
   Gateway, Inc.*, 886 F. Supp. 2d 1170, 1181 (C.D. Cal. 2012) ("the NAF has ceased its
26 operations . . . *i.e.*, arbitrating disputes between companies and private individuals.");
   *Meskill v. GGNSC Stillwater Greeley LLC*, 862 F. Supp. 2d 966, 976 (D. Minn. 2012)
27 (noting the issue of whether the unavailability of NAF as arbitrator dooms the arbitration
   clause "has vexed courts across the country and resulted in a substantial split of
28 authority"); *Jones v. GGNSC Pierre LLC*, 684 F. Supp. 2d 1161, 1163 (D.S.D. 2010)
   ("The National Arbitration Forum ("NAF"), however, has entered into a Consent

                                    14

ment, as well as the specific language providing, "any claim shall be resolved by binding arbitration...conducted by the National Arbitration Forum" to support the proposition that NAF's designation as the arbitration forum is an integral aspect of the Agreement.  (*Id.*)

Moving Defendants argue, however, that (1) NAF is not integral to the agreement; (2) Section 5 of the FAA  permits a court to appoint an alternative arbitrator in the event a designated forum is unable to arbitrate the matter; and (3) the Agreement contained a severance clause permitting any unenforceable or invalid portions of the Agreement to be severed from the Agreement, without affecting the validity of the remaining sections. (Doc. No. 26 at 9.)  Specifically, Moving Defendants note the underlying Agreement expressly permits any references to NAF, or more generally, any "portion of the arbitration provision . . . deemed invalid or unenforceable" to be severed without invalidating the remainder of the Agreement.  (Doc. No. 26 at 10.)

The issue posed by the unavailability of NAF is addressed within Section 5 of the FAA, which provides a mechanism for substituting an arbitrator when the designated arbitrator is unavailable.  *See Khan*, 669 F.3d at 354; *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000).  Section 5 provides in pertinent part, "if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator . . ."  9 U.S.C.A. § 5.  The ability of a court to designate an alternate arbitration forum is not without limit, however, as many circuit courts have recognized an arbitration clause may be unenforceable where the designation of an arbitration forum is "integral" to the agreement.  *See Reddam v. KPMG LLP*, 457 F.3d 1054, 1060 (9th Cir. 2006)  *abrogated on other grounds by Atlantic Nat. Trust LLC v. Mt. Hawley Ins. Co.*, 621 F. 3d 931 (9th Cir. 2010)).  "When a court asks

---

Judgment where it no longer arbitrates consumer disputes")*; Carideo v. Dell*, Inc., 2009 WL 3485933 (W.D. Wash. Oct. 26, 2009) ("NAF does not arbitrate consumer disputes filed after July 24, 2009).  Accordingly, the Court finds sufficient evidence of NAF's unavailability without needing to rely upon the evidence offered by Plaintiff and objected to by the Moving Defendants.  Thus, Plaintiff's request for judicial notice is DENIED, and Moving Defendants' objections are OVERRULED accordingly.

whether a choice of forum is integral, it asks whether the whole arbitration agreement becomes unenforceable if the chosen arbitrator cannot or will not act." (*Id.*)  "Only if the choice of forum is an integral part of the agreement to arbitrate, rather than an 'ancillary logistical concern' will the failure of the chosen forum preclude arbitration.'" *Id.* (citing *Brown*, 211 F.3d at 1222).  A court will therefore decline to appoint an alternate arbitrator as permitted by the FAA only when the original choice of forum was, "so central to the arbitration agreement that the unavailability of that arbitrator [brings] the agreement to an end." *Khan v. Dell Inc.*, 669 F.3d 350, 354 (3d Cir. 2012) (quoting *Reddam*, 457 F.3d at 1061).  Thus, the Court must determine whether the references to NAF and the NAF Code of Procedure are integral to the Agreement such that the Moving Defendants may not compel arbitration under the circumstances.

In determining whether the selection of an arbitrator is integral to an agreement, courts utilize general principles of contract interpretation.  *See e.g. Mitsubishi Motors Corp.*, 473 U.S. at 626; *Harvey v. Joyce*, 199 F.3d 790, 793 (5th Cir. 2000).  The interpretation of an arbitration agreement is generally a matter of state law.  *Mitsubishi Motors Corp.*, 473 U.S. at 626.  Under Utah law, a court must first look to the four corners of the document in interpreting the Agreement.  *Reed v. Davis County Sch. Dist.*, 892 P.2d 1063, 1064-65 (Utah Ct. App. 1995)*; Ron Case Roofing & Asphalt v. Blomquist,* 773 P.2d 1382, 1385 (Utah 1989).  "When a contract is in writing and the language is not ambiguous, the intention of the parties must be determined from the words of the agreement." *Reed*, 892 P.2d at 1064-65.  Thus, the Court looks to the language of the Agreement in order to assess the parties' intentions in selecting NAF as the forum for arbitration. *See Mitsubishi Motors Corp.,* 473 U.S. at 626 ("As with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability.")

In the present case, the Agreement expressly states NAF will be the forum for arbitration and also provide the code of procedure to govern any arbitration resulting from the Agreement.  (Doc. No. 18-3 at 10, ¶¶ 35, 36.)  However, after reviewing the

entirety of the arbitration provisions and taking into account the nature of the non-negotiated credit card Agreement, there is no evidence suggesting the designation of NAF as the forum for arbitration was anything more than a "ancillary logistical concern." *See Brown,* 211 F.3d at 1222 (noting "there is no evidence that the choice of NAF as the arbitration forum was an integral part of the agreement to arbitrate").  Rather than being an integral part of the Agreement, NAF's designation appears to be simply part of the standard credit card agreement used by Advanta Bank at the time Plaintiff opened her Account. *See Jones*, 684 F. Supp. 2d at 1168 ("The Court is mindful that the arbitration agreement is a standard form . . . not negotiated by the parties . . . Under such circumstances, the term specifying NAF rules was not integral to Ms. Jones' decision to sign the Arbitration Agreement.").  Additionally, Plaintiff has not established, or even argued, that she would not have entered into the underlying Agreement in the event of  NAF's unavailability to arbitrate the resulting disputes.  Nor does the Agreement itself suggest any intent by the parties not to arbitrate should NAF be unavailable. *Khan,* 669 F.3d at 354.  The language of the Agreement contradicts any argument that the parties intended not to arbitrate their disputes in the event that NAF was unavailable. [8]

Moreover, nothing in the Agreement suggests NAF's unavailability should render the arbitration provisions unenforceable altogether; rather, the Agreement suggests exactly the opposite.  Specifically, the Agreement provides that if any part shall be rendered unenforceable, "that fact will not invalidate the remaining portions of the agreement." (Doc. No. 18-3 at 10.)  This severance clause is expressly referenced in the section of the Agreement titled "Arbitration Provision" and immediately follows the

---

[8] Plaintiff cites an unpublished Fifth Circuit case for the proposition that NAF is integral to the arbitration agreement by virtue of the express designation of the NAF as the forum for arbitration.  (Doc. No. 25 at 19 (citing *Ranzy v. Tijerina,* 393 F. App'x 174, 176 (5th Cir. 2010).)  The agreement in *Ranzy* did not include a severance clause, however, and therefore is distinguishable from the Agreement at issue in this case.

Arbitration Provision and Arbitration Disclosure sections of the Agreement.[9]  *See Jones,*
684 F. Supp. 2d at 1166-67 ("The severance provision indicates that the intention was not
to make the NAF integral, but rather to have a dispute resolution process through arbitra-
tion.")  Further, while the language of the Agreement does state arbitration, "shall...be
resolved by binding arbitration . . . conducted by the National Arbitration Forum," and
"all aspects of any arbitration . . . shall be conducted under the NAF code of Procedure,"
the Agreement does not include language to the effect that NAF would serve as the
"exclusive" or sole forum for arbitration.[10]

Given NAF's current inability to conduct consumer arbitrations, any portions of
the Agreement expressly referencing NAF or the NAF Code are effectively unenforce-
able.[11]  However, the severability provision contained in the Agreement permits the
references to NAF and the NAF Code to be removed without invalidating related

---

[9] Plaintiff cites *Klima v. Evangelical Lutheran Good Samaritan Soc'y*, 2011 WL 5412216 (D. Kan. Nov. 8, 2011), in which the court held that references to the NAF and the NAF Code of Procedure were integral to the agreement and declined to compel arbitration despite there being a severance clause contained in the agreement. *Id.  Klima* is distinguishable from the present situation, however, because the severance provision in *Klima* was not contained within the arbitration agreement itself, but more generally in the underlying agreement.  Here, the Agreement contains both a general severance clause, (Doc. No. 18-3 at 10, ¶ 32), and a separate severance provision within the arbitration provisions, suggesting the parties' intent to arbitrate above all else.

[10] In *Carideo v. Dell, Inc.*, the court concluded the selection of NAF was integral to the arbitration provision where it specifically stated arbitration "shall be resolved exclusively and finally by binding arbitration administered by the National Arbitration Forum (NAF) under its Code of procedure then in effect...."  2009 WL 3485933 (W.D. Wash. Oct. 26, 2009)  Significantly, the policy in *Carideo* did not include a severability clause at all, much less one directly following the arbitration provisions.  Moreover, the policy presently at issue does not include the "exclusively and finally" language contained in the provisions in *Carideo*.  Thus, the facts in the present case are distinguishable.

[11] Similarly, the NAF Code appears unavailable as Plaintiff suggests the NAF Code may only be administered by NAF or by any entity or individual providing administrative services by agreement with the National Arbitration Forum.  (Doc. No. 25 at 26.)  For the same reasons NAF itself was not integral to the Agreement, neither is the NAF Code.  Designation of the NAF Code was not negotiated by the parties, Plaintiff has not argued she would not have entered into the Agreement if the NAF Code was unavailable, and there is no evidence the parties intended not to arbitrate their disputes in the event the NAF Code was unavailable.  Moreover, the severability provision allows references to the NAF Code to be removed without invalidating related provisions providing for the arbitration of all claims.

provisions providing for the arbitration of all claims.  Insomuch as the language of the Agreement excuses any unenforceable provisions, without invalidating the entire agreement, and in accordance with the well-established rule that any doubts be resolved in favor of arbitration, the Court finds the arbitration provisions survive NAF's unavailability.  Further, pursuant to the terms of Section 5 of the FAA, the inability of NAF to perform the arbitration permits the Court to appoint a substitute arbitrator.  *Khan*, 669 F.3d at 356-57 ("We conclude therefore that the unavailability of NAF to hear the disputes between  Khan and Dell constitutes a "lapse" within the meaning of Section 5.").

Accordingly, NAF's unavailability to arbitrate consumer disputes does not preclude arbitration as NAF is not an integral component of the agreement to arbitrate, and the severance clause contained in the Agreement permits any references to NAF to be disregarded in light of its unavailability.  Thus, the arbitration provisions under the Agreement are valid and encompass Plaintiff's claims against Defendants.  Accordingly, arbitration is warranted under the circumstances, and the Court will designate a new forum for arbitration in accordance with Section 5 of the FAA.

### *CONCLUSION*

For the reasons set forth above, the Court **GRANTS** Moving Defendants' motion to compel arbitration and stay action.  The Court further **ORDERS** as follows:

1.  Plaintiff and the Moving Defendants must meet and confer in an attempt to agree on an alternative arbitral forum and submit a joint motion to approve the agreed upon arbitrator ***on or before April 30, 2013.***  Alternatively, if the parties cannot reach an agreement, each party must submit nominations to the Court of two binding arbitrators along with the nominees' *curricula vitae* and rates to be charged for their services.

2.  Any oppositions to the nominees must set forth specific objections to the proposed arbitrators and must be filed by ***May 14, 2013.***

3.  Thereafter, the Court will appoint an arbitrator based upon the information provided by the parties.

4.     There being further action necessitated by the parties prior to arbitration, the Court DENIES Moving Defendants' Motion to Stay Action without prejudice at this time.

**IT IS SO ORDERED.**

*DATED: March 28, 2013*

_____
*Hon. Anthony J. Battaglia*
*U.S. District Judge*